**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| LIRONG "SCARLETT" GUO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. |
| v. | ) | 07-40051-FDS |
| | ) | |
| DATAVANTAGE CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM AND ORDER ON DEFENDANT'S**
**F.R. CIV. P. 12(b)(6) MOTION TO DISMISS COUNTS II, IV, V, VI AND VII OF**
<u>**PLAINTIFF'S COMPLAINT**</u>

**SAYLOR, J.**

This is a claim for discrimination on the basis of gender and disability. Jurisdiction is based on diversity of citizenship. Plaintiff Lirong ("Scarlett") Guo alleges that her former employer, defendant Datavantage Corporation, unfairly discriminated against her as a result of her pregnancy and maternity leave. Specifically, Guo contends that Datavantage discriminated against her on the basis of gender in violation of Mass. Gen. Laws ch. 151B, § 4 (count I); failed to honor her accrued leave in violation of ch. 149, § 105D (count II); unfairly discriminated against her on the basis of temporary disability (count III); and engaged in misrepresentation, fraud, and deceit (count V).[1]

Datavantage has moved to dismiss counts II and V for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the motion to dismiss will be granted as to Count II, and plaintiff will be given leave

---

[1] Plaintiff has assented to the dismissal of counts IV, VI, and VII.

to amend Count V to correct its deficiencies.

**I.        Background and Standard of Proof**

      **A.        Background**

The following allegations are taken as true for the purposes of the present motion.

Lirong "Scarlett" Guo is a citizen of Shrewsbury, Massachusetts. Datavantage Corporation is a Ohio corporation with a principal place of business in Cleveland, Ohio.

In 2003, Datavantage hired Guo to work at its Westborough, Massachusetts, office as a software configuration specialist. Her employment progressed without apparent incident until late 2004. She maintains that up until that time, her performance reviews were consistently positive.

In late 2004, Guo became pregnant. She notified her employer of the pregnancy and continued to perform her normal job duties until the day before she gave birth. In July 2005, she delivered her child and immediately went on a twelve-week maternity leave.

Until at least July 2005, Guo's manager at Datavantage had been Carole Hilton. At some point during the summer of 2005, another Datavantage employee, Ron Thompson, replaced Hilton. Thompson's tenure began at some point after Guo began her maternity leave. Guo did not report directly to Thompson, but rather to a team leader, Linda Wong, who then reported to Thompson. Wong was aided in her management duties by Linda-Jean Hall, a separate team leader with more tenure and experience at the company.

On October 20, 2005, Guo returned from her maternity leave. She was placed in her former working group, supervised by team leader Wong and ultimately managed by Thompson. On that same day, October 20, she received a biannual work performance review, which covered both the three months preceding her maternity leave and the three months of maternity leave. She

received a score of 85.35 out of 100 on that review. The review did not mention any attendance or punctuality issues. Although the review detailed various ways in which she could improve her technical skills, her overall score and performance were classified as "meeting expectations."

According to Guo, between October 20 and November 10, 2005, her work performance was subjected to greater scrutiny then she had ever previously experienced at Datavantage. She contends that when she was only minutes late for work, she was reprimanded and the incident documented. She was also forced to e-mail her supervisors when leaving for lunch and upon her return from lunch, ostensibly because she was taking too much time at lunch (although Guo vigorously disputes this). Other workers were free to leave or return from lunch without such supervision.

On November 10, 2005, Guo was placed on an "informal performance improvement plan" by Datavantage. In a document entitled "Action Plan Notes with Scarlett," she was asked to pay closer attention to her daily arrival time, departure time, and lunch period. She was also told that she needed to work on her communication skills and be more willing to seek help from co-workers or supervisors. Finally, the company directed Guo to have Linda Wong sit in on any of her telephone conferences with customers and to forward all of her customer e-mails and project manager/account manager e-mails to Wong.

Again according to Guo, after she was placed on the "improvement plan" she continued to be subject to close scrutiny. When she used sick days, she was asked to provide a doctor's note. When she attempted to use vacation time, she was told that she had failed to schedule it sufficiently in advance.[2]

---

[2] Guo had retained sick leave, vacation days, and personal days from prior to her maternity leave.

On January 27, 2006, another performance improvement document was presented to Guo, signed by Ron Thompson, Linda Wong, Linda-Jean Hall, and Rebecca Jackson (a human resources department employee).  The document stated that her performance issues were "approaching unmanageable magnitude."  It detailed various deficiencies in her job performance, stating (among other things) that she was consistently arriving at work late.  She was placed on sixty-day performance probation, during which she was required to forward all written communication between herself and clients or project managers to Wong and to give Wong weekly updates on assigned projects.  The plan also stated that the quality of Guo's work had to "notably improve immediately."

On the morning of February 14, 2006, Guo experienced severe neck, shoulder, and back pain related to her pregnancy.  She informed Wong and Hall that morning that she was sick and could not come in to work.  She was told that she had to provide a doctor's note to explain the absence, and that her failure to do so would result in disciplinary actions.  However, her pain was so severe that it prevented her from being able to drive to the doctor and obtain a note.

On February 16, Guo went to a hospital emergency room complaining of shortness of breath and severe back and neck pain.  She obtained a doctor's note excusing her absence that day (and suggesting that she miss work the following day, as well).  On the same day she was in the emergency room, Rebecca Jackson e-mailed her indicating that she was required to provide a doctor's note for her February 14 absence.  The e-mail stated that if a note were not provided, she risked disciplinary action up to and including termination of her employment.

Guo was the only person in her team of software specialists who had young children or had ever taken a leave of absence due to maternity leave.  By February 16, she had concluded that

Datavantage was discriminating against her on the basis of gender (and the gender-linked characteristic of pregnancy). She resigned from Datavantage that day. She maintains that during the period after her delivery, from October 20, 2005, to February 16, 2006, the quality of her work had not diminished from the pre-pregnancy period.

### B.  Procedural History

Guo filed a complaint with the Superior Court for Worcester County, Massachusetts, on January 31, 2007.[3] On March 6, 2007, defendant filed a notice of removal to this Court under 28 U.S.C. § 1446. The case was removed to this Court on March 22, 2007.

### C.  Standard of Proof

To survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the factual allegations in a complaint must "possess enough heft" to set forth "a plausible entitlement to relief." *Gagliardi v. Sullivan,* 2008 WL 162470 *1, *3 (1st Cir. 2008) (*quoting Bell Atl. Corp. v. Twombly*, - - - U.S. - - - , 127 S. Ct. 1955, 1966-67, 167 L. Ed.2d 929 (2007)). Dismissal for failure to state a claim is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi*, 2008 WL 162470 at *3 (*quoting Centro Medico del Turabo*, *Inc.*, *v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

## II.  Count II

Count II alleges that defendant violated Mass. Gen. Laws ch. 149, § 105D when it "failed to honor Ms. Guo's accrued sick days." The statute states in relevant part:

---

[3] The record does not reveal whether plaintiff made the requisite filing before the Massachusetts Commission Against Discrimination pursuant to Mass. Gen. Laws ch. 151B, § 5.

**§ 105D.  Entitlement of female employees; rights and benefits**

A female employee who has completed the initial probationary period set by the terms of her employment or, if there is no such probationary period, has been employed by the same employer for at least three consecutive months as a full-time employee, who is absent from such employment for a period not exceeding eight weeks for the purpose of giving birth . . . said period to be hereinafter called maternity leave, and who shall give at least two weeks' notice to her employer of her anticipated date of departure and intention to return, shall be restored to her previous, or a similar position with the same status, pay, length of service credit and seniority, wherever applicable, as of the date of her leave . . . .

Such maternity leave shall not affect the employee's right to receive vacation time, sick leave, bonuses, advancement, seniority, length of service credit, benefits, plans or programs for which she was eligible at the date of her leave, and any other advantages or rights of her employment incident to her employment position . . . .

*Id.*

The statute clearly applies only to female employees who are "absent from [their] employment for a period *not exceeding eight weeks*" (emphasis added).  Plaintiff, however, explicitly states in her complaint that she took twelve weeks of maternity leave, from an unspecified date in July 2005 until October 20, 2005.

Relevant authority on the meaning and implication of the "not exceeding eight weeks" language is almost nonexistent.  The only Massachusetts court to consider the issue directly stated:

> [Plaintiff's] claims under c. 149 are barred in any case because she was on maternity leave for over eight weeks.  A female employee is protected under the statute if their maternity leave is for a period "not exceeding eight weeks."  Therefore, the protections of c. 149 do not apply here.  Plaintiff asks the court to recognize, as a matter of public policy, that employers can evade the statute by giving employees over eight weeks of maternity leave.  This issue is for the legislature to address and not the courts.

*McKearney v. Answer Think Consulting Group, Inc.*, 2001 WL 417179 p. * 4 n. 9 (Mass. Super.

2001). The Supreme Judicial Court of Massachusetts has remarked in dicta:

> Situations may occur in which a pregnant employee can show that [statutory] noncompliance is in no way indicative of her willingness or desire to preserve her post. For example, the employee *might not qualify for statutory protection*—§ 105D applies only to employees who have "completed the initial probationary period" or who have been "employed by the same employer for at least three consecutive months as a full time employee," *and who are absent for no more than eight weeks* . . . .

*Dohoney v. Director of the Div. of Emp. Security*, 377 Mass. 333, 338 n.4 (1979) (emphasis added); *see also Caola v. Delta Airlines*, 35 F. Supp. 2d 47, 52 (D. Mass. 1999) ("Thus, under Massachusetts law, the eight-week period serves as a ceiling rather than a floor as [plaintiff] contends").[4]

In any event, no case has held that "a period not exceeding eight weeks" means "a period exceeding eight weeks." Plaintiff may well be entitled to recover under other theories, but the protections of ch. 149, § 105D plainly do not apply to her. She took a twelve-week maternity leave, and is therefore outside the protection of § 105D. Count II accordingly will be dismissed for failure to state a claim.

### III. Count V

#### A. Pleading Sufficiency of Claim

Count V alleges that Datavantage engaged in "misrepresentation, fraud, and deceit." Plaintiff's specific contentions are as follows:

> Datavantage used misrepresentation and deceitful tactics to make an uncomfortable work environment for Mrs. Guo, which ultimately resulted in her resignation due to stress and intimidation.

---

[4] A federal court sitting in diversity must borrow the substantive law of the forum state. *Erie R..R. Co. v. Tompkins*, 304 U.S. 64, 78 (1934). Both parties agree that Massachusetts law applies to this dispute.

> Upon returning from maternity leave, Mrs. Guo was written up for bogus performance issues, falsely accused of tardiness, not allowed to take vacation days which she had rightfully accrued, and was told that she faced imminent discharge for failing to produce a doctors (*sic*) note justifying a sick day.
>
> Datavantage misrepresented the fact that Mrs. Guo had performance issues despite the fact that she had consistently received positive performance reviews and raises.

Complaint at 10.  Defendant contends that this complaint fails to plead fraud with specific particularity, as required by Fed. R. Civ. P. 9(b), and must therefore be dismissed.

Ordinarily, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  For that reason, "great specificity is ordinarily not required to survive a Rule 12(b)(6) motion." *Garita Hotel,* 958 F.2d at 17.  However, "[c]ases alleging fraud—and for this purpose, misrepresentation is considered a species of fraud—constitute an exception to [the general rule]." *Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 29 (1st Cir. 2004).  That exception, set forth in Fed. R. Civ. P. 9(b), requires that fraud be alleged with particularity.  Rule 9(b) states: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake should be stated with particularity. Malice, intent, knowledge, and other conditions of mind of a person may be inferred generally." The principal purpose of this heightened pleading requirement is to give the defendant adequate notice of the claim of fraud. *New England Data Services, Inc. v. Becher*, 829 F.2d 286, 288 (1st Cir. 1987).

The "particularity" language of 9(b) requires, among other things, that a plaintiff state the time, place, and content of the purportedly false or fraudulent statement. *Rodi*, 389 F.3d at 15 (citing *Powers v. Boston Cooper Corp.*, 926 F.2d 109, 111 (1st Cir. 1991)); *Whelan*, 889 F. Supp. at 19.  The complaint must set forth "specific facts that make it reasonable to believe that

defendant knew that a statement was materially false or misleading." *Greenstone v. Cambez Corp.*, 975 F.2d 22, 25 (1st Cir. 1992). Finally, plaintiff must specifically explain how she relied upon the misrepresentation and how that reliance was detrimental to her. *International Floor Crafts*, 477 F. Supp. 2d at 341.

Plaintiff has failed entirely to meet any of these requirements. The complaint does not state the names of the Datavantage officers or employees who made the purportedly fraudulent or false statements. It does not state when the statements were made. Although the wording of the complaint hints at the theme of the allegedly fraudulent statements (such as Guo being "falsely accused of tardiness" and that Datavantage "misrepresented the fact that Mrs. Guo had performance issues"), the actual statements are not specifically described or explained. And plaintiff has failed to identify how she relied upon the misrepresentations and how that reliance was detrimental to her.  In its current form, the complaint is unquestionably deficient.

**B.     Request for Leave to Amend**

Plaintiff requested, in the event the claim was deemed to be insufficiently pleaded, leave to amend the claim and cure the defect under Fed. R. Civ. P. 15(a). At this stage of the proceedings, leave to amend is normally granted liberally. *See Hayduk v. Lanna*, 775 F.2d 441, 445 (1st. Cir. 1985). Although the Court has considerable doubts as to whether a claim for misrepresentation is appropriate in a garden-variety employment discrimination case such as this, plaintiff will be given the opportunity to establish otherwise. Accordingly, plaintiff's request to amend Count V of her complaint will be granted.[5] Plaintiff will be given 21 days to cure the deficiency. If she elects to

---

[5] Datavantage asserts that even if the claim is pleaded with the requisite particularity, the claim is deficient as a matter of law because it fails to establish the substantive elements of Massachusetts common law fraud. The Court will revisit that issue as appropriate after plaintiff has had an opportunity to amend the

file an amended complaint as to Count V, the Court will reconsider, on appropriate motion, defendant's alternative assertion that the claim is deficient as a matter of law.

## IV.     Conclusion

For the foregoing reasons, the motion to dismiss of defendant Datavantage Corporation for failure to state a claim is GRANTED as to Counts II, IV, VI, and VII, and DENIED without prejudice as to Count V.  Plaintiff may amend Count V by February 18, 2008.  If she does not file an amended complaint by that date, Count V will likewise be dismissed.

**So Ordered.**

                    /s/ F. Dennis Saylor
                    F. Dennis Saylor IV
                    United States District Judge

Dated: January 28, 2008

---

complaint.